IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| John G. Singletary, Jr., | ) | C/A  2:11-0484-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Wachovia Mortgage Corporation/Wells | ) | |
| Fargo, its agents, servants, employees and | ) | |
| others collectively and individually, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

This action has been filed by the Plaintiff,[1] pro se, pursuant to the Fair Housing Act,

other federal statutes, as well as pursuant to some state law causes of action.  On November 21,

2012, the Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court

advising Plaintiff of the importance of a motion for summary judgment and of the need for him to

file an adequate response.  Plaintiff was specifically advised that if he failed to respond adequately,

---

[1]The caption of the Complaint actually lists two Plaintiffs, John Singletary and Carla
Singletary.  However, as only John Singletary signed the pleadings, he is the only listed Plaintiff in
the case.  Asad v. Arab Bank, PLC, 117 Fed. Appx. 466, 467 (7th Cir. Nov. 12, 2004)[Plaintiff who
is not a lawyer may not represent the interests of any other litigant]; Myers v. Loudon Co. Pub. Sch.,
418 F.3d 395, 401 (4th Cir. 2005)[a pro se person's right to litigate for oneself does not create a
similar right to litigate on behalf of others].

1



the Defendant's motion may be granted, thereby ending his case. However, notwithstanding the specific instructions and deadlines as set forth in the Court's <u>Roseboro</u> order, Plaintiff has failed to file any response to the Defendant's motion for summary judgment,[2] which is now before the Court for disposition.[3]

### Background and Evidence[4]

Plaintiff alleges in his Verified Complaint[5] that real property owned by him in North Charleston, South Carolina is being improperly foreclosed upon in state court because the Defendant, the purported holder of the mortgage on the subject property, obtained the mortgage interest through the Mortgage Electronic Registration Systems, Inc. (MERS), which has been found in other states to not be a proper debt transfer entity. <u>See</u> <u>Plaintiff's Complaint</u>, attached Exhibit A [Lis Pendens and Notice of Master's Sale]. Plaintiff further alleges that the Defendant's attempt to foreclose on his property is "wilful, intentional, purposeful discriminatory Fair Housing conduct, a refusal to

---

[2]The docket further reflects that the Court has not had any contact from the Plaintiff regarding this case since a filing of October 26, 2012. <u>See</u> Court Docket No. 182.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).

[5]In this Circuit, verified complaints by <u>pro se</u> litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, even though the Plaintiff has not filed a response to the motion for summary judgment, the undersigned has considered the factual allegations in the Complaint as evidence for purposes of this opinion.



prevent or eliminate discriminatory practices, conscious disregard for fair housing rights, wilful commission of unlawful conduct, intimidation and harassments, violations of conduct without just cause or excuse, aiding conspiratorial efforts of suppressing evidence during a federal proceeding, [and] conspiring with a defendant in violation of e-discovery regulations."  Plaintiff alleges that the Defendant has also "wilfully shared and published Plaintiff's sensitive information without Plaintiffs' consent and against their own company policy, injected and connected themselves into the conspiratory efforts of North Charleston's to destroy and alter documents during a federal proceeding in violation of the Sarbanes-Oxley Act", that the Defendant "shared and cause[d] to be published untrue defaming, and slanderous incorrect accusations about Plaintiffs", and "breached it's construction contract with the Plaintiffs and it appears that the Defendant has committed computer fraud as a financial institution by way of extracting and sharing private information".

In **Count I** of the Complaint, Plaintiff alleges violations of the Fair Housing Act, 42 U.S.C. § 1968 and 42 U.S.C. § 1988.  Plaintiff alleges that he obtained a construction loan from the Defendant which contained certain stipulations and requirements, but that the City of North Charleston refused to issue a Certificate of Occupancy for the home, which was a prerequisite to closing, based on disparate treatment and racial discrimination (Plaintiff is an African American), resulting in the premature foreclosing of Plaintiff's loan in state court.  See Wachovia v. Singletary, Civil Action No. 2009 CP-10-6219.  Plaintiff alleges that the Defendant, through its agents and servants, "either covertly and overtly conspired with [the] City of North Charleston to frustrate and prevent [Plaintiff] from ever obtaining [a Certificate of Occupancy] . . . thereby violating [Plaintiff's] right to enjoy a right to own, hold, occupy, and enjoy" the property in violation of his constitutional



rights and the Fair Housing Act.  Plaintiff alleges that the Defendants "conspiratorial involvement with the City of North Charleston to prevent occupancy" is a result of race discrimination and disparate treatment.  Plaintiff seeks the removal of the state foreclosure action to this federal court, and a finding that the Defendant has "failed to prove a right to foreclose".

In **Count II** of the Complaint, Plaintiff alleges a violation of the "Federal Real Estate Settlement Procedure Act of 1974", because Plaintiff did not receive disclosures required under federal law at the time of the loan application; specifically, a special information booklet containing consumer information on various real estate settlement services, a good faith estimate of settlement costs, and a mortgage servicing disclosure statement.  Plaintiff further alleges that the Defendant failed to provide the required annual escrow account statement, as well as a servicing transfer statement.  Plaintiff asserts that he is entitled to actual damages for violations of these requirements.

In **Count III** of his Complaint, Plaintiff asserts a violation of the Federal Truth in Lending Act and the Equal Credit Opportunity Act, which prohibit discrimination on the basis of race or other protected status, and which also require creditors to provide applicants, upon request, with the reasons underlying decisions to deny credit.  Plaintiff alleges that the Defendant, through its servants and agents, did not comply with these requirements.

In **Count IV** of the Complaint, Plaintiff alleges a "conspiracy against Civil Rights", again alleging that the Defendant acted in concert with the City of North Charleston to violate Plaintiff's right to own and possess his home in violation of his constitutional rights, and that in doing so "knowingly shared Plaintiff's private and sensitive information along with untrue statements from the City of North Charleston to Defendant's agent" and a third party (Beresford and

4



Bates).  Plaintiff alleges that an agent of the Defendant supplied the City of North Charleston with information from another state regarding Plaintiff's "personal, unpublished mortgage information" which led to damages being suffered by the Plaintiff.

In **Count V** of the Complaint, Plaintiff alleges a violation of the Sarbanes-Oxley Act, in that Plaintiff " believe[s] that Defendants intentionally, with full knowledge and with malicious intent had David Bates of Beresford appraisers to prepare for submittal false documents based upon their information from the City of North Charleston".  Plaintiff alleges that this appraisal contains false "statements in order to downgrade the value of Plaintiff's home in order to re-enter bankruptcy court based upon diminished or no equity in order to proceed with foreclosure proceeding in a state court action."  Plaintiff apparently seeks criminal sanctions against the Defendant based on this claim.

In **Count VI** of the Complaint, Plaintiff again alleges violations of his constitutional rights through the Defendant conspiring with the City of North Charleston to prevent him from obtaining a certificate of occupancy for his house.  Plaintiff alleges that this conspiracy was predicated upon his race and "perpetrates a policy, pattern, custom, and usage of racial discrimination . . . .".

In **Count VII** of the Complaint, Plaintiff alleges violations of 42 U.S.C. § § 1983 and 1985, again referencing the Defendant's alleged conspiracy with the City of North Charleston to prevent a certificate of occupancy being issued, and that the Defendant's agents used the previously cited appraisal from Beresford Associates as part of this effort.

In **Count VIII** of the Complaint, Plaintiff alleges state law claims for defamation,



libel and slander. This allegation apparently arises out of the Defendant and/or North Charleston having provided information to David Bates (the appraiser) that "was untrue, false, and unfounded", and also with respect to Wells Fargo's agents' communications with City of North Charleston employees, agents, and attorneys on numerous occasions regarding the subject property and the pending state court mortgage foreclosure action.

In **Count IX** of the Complaint, Plaintiff alleges a state law claim of breach of contract because the Defendant has "not performed in accordance with the required truth in lending obligations, RESPA obligations, and FRESA guidelines", and has intentionally interfered with Plaintiff's ability to acquire a certificate of occupancy.

In **Count X** of the Complaint, Plaintiff alleges a claim for breach of privacy. Plaintiff alleges that the Defendant violated the "Privacy Act of 1974" because the Defendant provided information from its files to other persons (apparently officials with the City of North Charleston) without the written consent of the Plaintiff.

In **Count XI** of the Complaint, Plaintiff alleges a violation of the "Fraud and Computer Fraud and Abuse Act [of] 1986". In this Count, Plaintiff alleges that the Defendant provided information contained in their computer records concerning the Plaintiff to the City of North Charleston without Plaintiff's authorization, and that it did so with an intent to "defraud". Plaintiff also alleges that the Defendant, in conjunction with MERS, filed a lis pendens in Charleston County as an attempt to "slander" the title of Plaintiff's property and "illegally [begin] the first step of a concerted effort to illegally foreclose on Plaintiff's property. . . .".

In **Count XII** of the Complaint, Plaintiff seeks emergency temporary and permanent



injunctive relief to prevent the foreclosure of the subject property.  Plaintiff also seeks monetary damages.  See generally, Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, the Defendant has submitted numerous affidavits, deposition excerpts, and exhibits.  Defendant also refers the Court to Plaintiff's litigation history, including a previous action filed by the Plaintiff in this Court against the City of North Charleston relating to North Charleston's refusal to issue to him his requested certificate of occupancy.  Singletary v. City of North Charleston, et al., Civil Action No. 2:09-1612.  Additionally, this Court can take judicial notice that Plaintiff has not only already litigated an encroachment issue and the City of North Charleston's refusal to issue him a certificate of occupancy for his home in this Court, but also in state court.  Singletary v. City of North Charleston, Board of Zoning Appeals, Case No. O8-CP-10-3929, Order filed January 9, 2009.  Plaintiff was unsuccessful in both his federal and state cases, and was also unsuccessful in defending the foreclosure action brought against him in state court by the Defendant.[6]  Wachovia Mortgage FSB Successor, in interest to Wachovia Mortgage Corporation v. Carla C. Singletary, John G. Singletary, Jr. and Wachovia Bank National Association, Case No. 2009-CP-10-6219 (filed on Dec. 29, 2010).  See Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009)[Courts "may properly take judicial notice of matters of public record."]; Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].

The evidence submitted shows that Plaintiff's wife, Carla Singletary, entered into a

---

[6]Defendant represents in its motion that Plaintiff filed the case at bar in this federal court on the very day the subject property was due to be sold at the foreclosure sale, and that as a result of the filing of this action, Plaintiff was able to stay the foreclosure sale and has retained possession of the property since that time.



Construction Loan Agreement with Wachovia Mortgage Corporation on December 21, 2006, in the original principle amount of $650,000. <u>See</u> Defendant's Exhibit A. <u>See also</u> Singletary Deposition, p.62, lines 8-10. At the loan closing, both Carla Singletary and the Plaintiff, assignees on the mortgage, signed a Settlement Acknowledgment and Certification and the Settlement Statement. <u>See</u> Defendant's Exhibits B and C. These documents include a certification by the closing attorney that, as settlement agent, he complied with the requirements of the Real Estate Settlement Procedures Act of 1974, as amended. These documents also contain an acknowledgment by the Plaintiff and his wife that they had received a completed final federal Truth in Lending Disclosure statement prior to the execution of the closing documents, and a completed copy of the Good Faith Estimate of Settlement Costs as well as the Settlement Costs and Helpful Information booklet required by the Real Estate Settlement Procedures Act of 1974, as amended. <u>Id.</u>; see <u>also</u> Plaintiff's Deposition, p. 63, at lines 21-22. Carla Singletary, as the loan applicant, also acknowledged receipt of the Mortgage Servicing Disclosure Statement, which includes the transfer requirements for the loan in the event the loan was to be transferred. <u>See</u> Defendant's Exhibit D [Disclosure Statement].[7]

Finally, the Defendant has also provided an affidavit from William Gore, Zoning Administrator for the City of North Charleston, in which Gore attests that he is familiar with the dispute involving 4321 Water View Circle (the subject property), and that in his capacity as zoning administrator he advised the City of North Charleston Board of Zoning Appeals regarding an

---

[7]Defendant correctly notes that there is no evidence that the loan at issue was ever transferred to a new or different servicer, as Carla Singletary obtained the loan from Wachovia Mortgage Corporation, which is now part of Wells Fargo, the Defendant in this case. <u>See</u> Court Docket No. 30, p. 1 [Wells Fargo Bank, N.A., successor by merger with Wachovia Bank N.A., assignee of Wachovia Mortgage Corporation].



encroachment of the steps of the residence onto the setback right of way, attended and testified at the zoning board meetings addressing Plaintiff's request for a variance, and conducted numerous site visits at the property. Gore attests that the City of North Charleston acted independently and on its own authority in denying Plaintiff's certificate of occupancy due to Plaintiff's violation of a zoning ordinance, and that the Defendant had no involvement in the City's analysis of the encroachment issue or the decision to deny the certificate of occupancy, which was made based on Plaintiff's refusal to bring his steps into compliance. Gore further attests that Plaintiff was advised repeatedly throughout the entire process that the denial of the certificate of occupancy was based on the encroachment of the steps of his residency into a right of way, which was a fixable matter, and that Plaintiff was treated no differently than any other individual found in violation of a zoning ordinance and who subsequently requests a variance. Gore attests that he was personally sued by the Plaintiff in Civil Action No. 2:09-1612, which was also concerning the home site's steps and the denial of a certificate of occupancy, and he has attached two affidavits submitted by him in that other case, outlining the process involved and the events surrounding the denial of a certificate of occupancy for the property. See Defendant's Exhibit E.

Plaintiff has submitted no evidence in opposition to Defendant's motion.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

9



Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the evidence and arguments provided to this Court, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

## I.

First, insofar as Plaintiff is attempting to challenge in this lawsuit the underlying merits of the City of North Charleston's decision not to issue a Certificate of Occupancy for his residence, that issue has already been litigated and decided adversely to the Plaintiff in Civil Action No. 2:09-1612. The Collateral Estoppel Doctrine prevents a party from re-litigating in a subsequent lawsuit an issue litigated and determined in a prior action. Stone v. Roadway Express, 627 S.E.2d 695, 698 (S.C. 2006)["Collateral estoppel prevents a party from re-litigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action"] (quoting Jinks v. Richland County, 585 S.E.2d 281 (S.C. 2003)); cf. United States v. Mendoza, 464 U.S. 154, 159 n. 4 (1984)["Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against . . . a different party"]; Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). The



requirements for collateral estoppel to apply are met in this case,[8] and Plaintiff cannot therefore now

re-litigate in this lawsuit the merits of the denial to him of a Certificate of Occupancy by the City of

North Charleston.

## II.

With respect to Plaintiff's Count I Fair Housing Act claim, this statute makes it

unlawful for a business that makes or purchases loans or provides other financial assistance in a

residential real estate related transaction, including construction loans secured by residential real

estate, to discriminate against any person in the making available of such loan or financial assistance

on the basis of, inter alia, race or color.  See 42 U.S.C. § 3605.  In order to survive summary

judgment on this claim, Plaintiff must have presented evidence sufficient to give rise to a genuine

issue of fact as to whether the action or practice being challenged was motivated by a discriminatory

purpose or had a discriminatory impact.  Wadley v. Park at Landmark LP, et al., 264 Fed. Appx. 279,

281 (4th Cir. 2008); Norman v. Fitzsimmons, No. 12-2972, 2012 WL 6018706, at * 2 (D.S.C. Nov.

7, 2012), adopted by, 2012 WL 6018704 (D.S.C. Dec. 3, 2012); see also Betsey v. Turtle Creek

Associates, 736 F.2d 983, 986 (4th Cir. 1984)[Discussing racial discrimination claims under the

---

[8]For collateral estoppel to apply to an issue or fact, 1) the issue or fact must be identical to the one previously litigated; 2) the issue or fact must have actually been resolved in the prior proceeding; 3) the issue or fact must have been critical and necessary to the judgment in the prior proceedings; 4) the judgment in the prior proceeding must be final and valid; and 5) the party asserting the issue must have had a full and fair opportunity to litigate the issue or fact in the prior proceeding.  Guess v. Reynolds, No. 10-1161, 2011 WL 3471054, at * 1, n. 1 (D.S.C. Aug. 8, 2011), citing In re Microsoft Corp. Antitrust Litigation, 355 F.3d 322, 326 (4th Cir. 2004).  All of these criteria were met in the previous litigation.  See Singletary v. City of North Charleston, No. 09-1612, 2012 WL 1309183 (D.S.C. April 16, 2012).



FHA].  Plaintiff has provided no such evidence.[9]

While Plaintiff makes the general and conclusory claims in his verified Complaint that the Defendant's attempt to foreclose on his property was a result of discriminatory practices or conduct on account of his race, including that the Defendant "conspired" with the City of North Charleston to deny him a Certificate of Occupancy for this purpose,[10] he has provided no evidence to support this general and conclusory claim.  See Wadley, 264 Fed. Appx. at 281 [Finding that Plaintiff's "own self-serving, unsubstantiated statements in opposition to [Defendant's] evidence [was] insufficient to stave off summary judgment"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].  Conversely, the Defendant has submitted affidavits from the North Charleston Zoning Administrator, who attests to the process and procedures used in Plaintiff's zoning case, and that the Defendant here had nothing whatsoever to do with the denial of a Certificate of Occupancy for the subject property.  See Defendant's Exhibit E.

Plaintiff has presented no evidence to support his claim that the Defendant

---

[9]Although, in light of Plaintiff's pro se status, the undersigned has evaluated Plaintiff's claims based on the evidence provided, as previously noted, Plaintiff did not even respond to the Defendant's motion for summary judgment or the evidence provided by the Defendant with that motion, and has submitted no evidence or even argument in response to show why the Defendant's motion should not be granted and summary judgment entered in this case.  Cf. Coker v. International Paper Co., No. 08-1865, 2010 WL 1072643 at * 2 (D.S.C. Mar. 18, 2010)["[A] plaintiff can abandon claims by failing to address them in response to a summary judgment motion."]; Jones v. Danek Medical, Inc., No. 96-3323, 1999 WL 1133272, at * 3 (D.S.C. Oct. 12, 1999)["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action"].

[10]This appears to be the principle claim Plaintiff asserts in this lawsuit.  See Plaintiff's Deposition, p. 64, lines 7-19.

12



"conspired" with the City of North Charleston to deny him a Certificate of Occupancy because he is an African American.[11]  Nor has Plaintiff provided any evidence that the Defendant's decision to foreclose on his wife's construction loan was for a discriminatory purpose or because he is African American.  It is undisputed that the Construction Loan Agreement required that a Certificate of Occupancy be obtained prior to conversion of the loan from a construction loan to a permanent loan, and that failure to obtain a Certificate of Occupancy by the conversion date (April 27, 2007) would constitute an event of default.  See Defendant's Exhibit A [Construction Loan Agreement], Preliminary Statement (Section (v)), Article 3 (¶ 2(b)(i)), Article 4 (¶ 5).  Further, Carla Singletary stopped making loan payments in 2009, which is another event of default.  See Defendant's Exhibit A [Construction Loan Agreement], Article 4 (¶ 1); see also Court Docket No. 138-1, p. 30.[12]

　　　　Plaintiff has presented no evidence, other than his own unsubstantiated comments and speculation, that the Defendant's decision to foreclose on his wife's construction loan had anything to do with his or his wife's race.  Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not

---

[11]Indeed, it was noted in Plaintiff's previous case, as well as by Gore in his affidavits, that Gore as well as the other principle North Charleston officials involved in Plaintiff's zoning case are all themselves African Americans. Cf. Sunrise Corporation of Myrtle Beach, et al. v. City of Myrtle Beach, 420 F.3d at 322, 329 (4th cir. 2002)[Rejecting plaintiff's claim of racial discrimination in a zoning matter where there was "no evidence in the record that [plaintiff] was subjected to purposeful, invidious discrimination"].

[12]The fact of Carla Singletary's default on this loan has already been established in the state court foreclosure action.  Wachovia Mortgage FSB Successor, in interest to Wachovia Mortgage Corporation v. Carla C. Singletary, John G. Singletary, Jr. and Wachovia Bank National Association, Case No. 2009-CP-10-6219 (filed on Dec. 29, 2010).  See Philips, 572 F.3d at 180 [Courts "may properly take judicial notice of matters of public record."]; Crooked Lake Development, Inc. v. Emmet County, 763 F.Supp. 1398, 1404 (W.D.Mi.1991)["This court is bound by the state court's factual findings . . . ."]; see also Nunnery v. Brantly Construction Co., Inc., 345 S.E.2d 740, 743 (S.C. 1986)[Res judicata applies when the same parties or their privies are involved in both actions, the subject matter is the same, and the question in issue was actually ruled upon].



assume the truth of legal conclusions couched as factual allegations]; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though <u>pro se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].[13]  Therefore, this claim is without merit.  <u>Wadley</u>, 264 Fed. Appx. at 281 [To survive summary judgment, Plaintiff must have evidence to demonstrate that the action or practice being challenged was either motivated by a discriminatory purpose or had a discriminatory impact]; <u>Cooley v. Sterling Bank</u>, 280 F.Supp.2d 1331 (M.D.Al. 2003)[Granting summary judgment where the minority Plaintiff failed to prove disparate treatment in connection with a loan application], <u>aff'd</u>. 116 Fed. Appx. 242 (11th Cir. 2004).

### III.

        With respect to Plaintiff's claim that, at the time of the closing, he did not receive a special information booklet containing consumer information on various real estate settlement services, a good faith estimate of settlement costs, a mortgage servicing disclosure statement, servicing transfer statement, or an annual escrow account statement, all in violation of the Federal Real Estate Settlement Procedure Act of 1974, the evidence before the Court shows that Plaintiff and/or his wife signed a Settlement Acknowledgment and Certification wherein they certified that they had received a complete copy of the Good Faith Estimate of Settlement Costs, the Special

---

[13]Although Plaintiff did not file a response to the Defendant's motion for summary judgment, he did submit some exhibits as attachments to other motions filed in this case.  <u>See</u> Court Docket Nos. 1-1, 138-1.  In light of Plaintiff's <u>pro se</u> status, the undersigned has reviewed those exhibits and finds nothing therein which supports Plaintiff's claims or that would give rise to a genuine issue of fact as to whether a discriminatory purpose was involved in the Defendant's decision to foreclose on Plaintiff's wife's construction loan. <u>See also</u> Court Docket Nos. 106-2 through 106-4, 120-1, 123-2 through 123-4, 168.

14



Information Booklet, a Truth In Lending Disclosure Statement, as well as an Acknowledgment of Receipt of the Mortgage Servicing Disclosure Statement, which includes the loan transfer information. The Settlement Statement also specifically addressed the escrow requirement. <u>See</u> Defendant's Exhibits A-D. The Settlement Acknowledgment and Certification [Defendant's Exhibit B] also contains a specific acknowledgment by the Plaintiff, Plaintiff's wife, as well as by the closing attorney that they had received the materials required by the Real Estate Settlement Procedures Act of 1974 or (in the case of the closing attorney) had complied with the requirements of that Act.

Plaintiff's assertion in Count II of his Complaint that this Act was not complied with is directly contradicted by the cited documentary evidence, and his claim that he is entitled to actual damages for violations of this Act is wholly unsupported. Plaintiff's own unsubstantiated claim in his verified Complaint that the requirements of this Act were not complied with, standing alone and without any corroborating evidence, does not create a genuine issue of fact sufficient to survive summary judgment. <u>Nat'l Enters., Inc. v. Barnes</u>, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; <u>King v. Flinn & Dreffein Eng'g Co.</u>, No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. 2012)[Finding no genuine issue of fact where only evidence opposing summary judgment was "uncorroborated and self-serving" testimony], citing <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002). This claim is therefore without merit.

### IV.

With respect to the Truth in Lending Act and Equal Credit Opportunity Act claims presented in Count III of the Complaint, Plaintiff has again failed to submit any evidence to show entitlement to any relief.

15



The Equal Credit Opportunity Act prohibits lenders from denying credit to individuals because of their race or color. Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 538 (7th Cir. 2011). Here, however, the Plaintiff (actually, Plaintiff's wife) received a loan from the Defendant.[14] See Plaintiff's Deposition, p. 62, lines 8-10, p. 64, lines 20-25. While Plaintiff contends that they should not have received a "subprime" loan; see Plaintiff's Deposition, p. 170; as is the case with Plaintiff's other claims, he has provided no *evidence* to support his claim that he or his wife were in any way discriminated against on the basis of their race in the providing of this loan, or with respect to the terms of this loan.[15] Just because Plaintiff says in his Complaint or in his deposition that he or his wife were discriminated against does not mean that that happened, and certainly does not mean that Plaintiff has provided any evidence to show that any such event occurred. Papasan, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]. Plaintiff cannot simply allege that he (or, actually, in this case his wife) were discriminated against on the basis of their race with respect to the terms and conditions of the construction loan at issue, fail to provide any supporting evidence for this assertion, and expect to survive summary judgment.[16] See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per

---

[14]Defendant correctly notes that, as Plaintiff's wife was the actual borrower in this case, Plaintiff lacks standing to even assert most of his claims relating to this loan. Myers, 418 F.3d at 401 [Pro se litigant's right to litigate for oneself does not create a similar right to litigate on behalf of others]; see also, n. 1, supra.

[15]In fact, Defendant's evidence is that Plaintiff's wife was given a prime rate loan, not a "subprime" loan, as Plaintiff apparently contends. See Court Docket No. 168-2 [Request to Admit].

[16]While Plaintiff has not provided any argument or evidence with respect to this claim in opposition to the Defendant's motion for summary judgment, the undersigned notes that, pursuant to a previous Order of the Court, the Defendant was required to submit supplemental responses to

(continued...)



curiam) [speculative and conclusory allegations cannot support claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) [Claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]. Hence, no evidence of an Equal Credit Opportunity Act violation is present in this case. Powell v. American General Finance, Inc., 310 F.Supp.2d 481, 486 (N.D.N.Y 2004)[ECOA "prohibits lenders from denying credit to individuals because of their race"].

Similarly, there is no evidence of a violation of the Truth In Lending Act, which protects borrowers from predatory lending practices by requiring certain disclosures to be made in the context of a real estate transaction. 15 U.S.C. § 1601. There is no evidence that Plaintiff or his wife did not receive the disclosures required by law for this loan. See, discussion, Section III, supra; see also Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)]. Further, Plaintiff conceded at his deposition that he and his wife received a Truth In Lending Statement at the closing. Plaintiff's Deposition, p. 63, lines 21-22; see also Defendant's Exhibit B [Settlement

---

[16](...continued)
Plaintiff's discovery requests, and that some of these responses addressed this issue. Out of an abundance of caution, the undersigned has reviewed these responses (which were filed with the Court) and does not find that these responses provide any support for this claim. See Court Docket No. 168-1, Responses to Plaintiff's First Set of Interrogatories to Defendant, Questions Nos. 6 and 22; Docket No. 168-2, Plaintiff's Second Set of Admissions to the Defendant, Question No. 6; Docket No. 168-3, Plaintiff's First Request for Admissions, Questions Nos. 1, 30, 34; Docket No. 168-4, Plaintiff's Second Production Requests dated July 13, 2012, Question No. 5.



Acknowledgment and Certification], ¶ A.  This claim is without merit.

## V.

With respect to Plaintiff's Civil Rights "conspiracy" claim, in which Plaintiff alleges that the Defendant acted in concert with the City of North Charleston to violate his right to own and possess a home in violation of his constitutional rights, there is no evidence of any unlawful conspiracy in this case.  Gore's affidavits clearly set forth the reasons behind the City of North Charleston's decision not to issue a Certificate of Occupancy for Plaintiff's residence, it has already been conclusively determined in Plaintiff's previous federal court action that Plaintiff's claims concerning North Charleston's failure to issue the Certificate of Occupancy for his residence were without merit; see Stone, 627 S.E.2d at 698 [Collateral estoppel "prevents a party from re-litigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action"]; and Gore attests in his affidavit that the Defendant had nothing whatsoever to do with North Charleston's decision.  See Defendant's Exhibit E.

Further, even if liberally construed as a conspiracy action brought pursuant to 42 U.S.C. § 1985(3), [17] in order to maintain a conspiracy claim under that Statute Plaintiff must have evidence showing 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities

---

[17]The Defendant has addressed this claim under 18 U.S.C. § 241, which deals with a conspiracy to deny rights as a criminal matter.  If this is the claim Plaintiff has intended to assert, Defendant correctly notes that Plaintiff cannot seek to have prosecutors or law enforcement officials institute a criminal action against the Defendant under this Statute, because a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person or entity.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Wallace v. Singleton, No. 12-729, 2012 WL 2405316, at * 7 (D.S.C. May 3, 2012), adopted by, 2012 WL 2407648 (D.S.C. June 26, 2012).



under the law; 3) an act in further of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102-103 (1974); <u>see</u> <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376-1377 (4th Cir. 1995); <u>see</u> <u>also</u> <u>Garvin v. Bargmann</u>, No. 08-2937, 2009 WL 735138 at * 2 (D.S.C. Mar. 18, 2009)[Must be state actors or acting under color of state law or in concert with]. The Supreme Court has further held that, in addition to these criteria, a Plaintiff must show that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus". <u>Id</u>., at 102. <u>See</u> <u>also</u> <u>Trerice v. Summons</u>, 755 F.2d 1081, 1084 (4th Cir. 1985). Here, as has been previously discussed, even if there was evidence that the Defendant did enter into a "conspiracy" with the City of North Charleston to deny him a Certificate of Occupancy, Plaintiff has failed to present any evidence of a discriminatory motive on the part of the Defendant. <u>Thomas v. Roach</u>, 165 F.3d 137, 145 (2d Cir. 1999)[Plaintiff must set forth facts to show that "some racial, or perhaps otherwise class-based, invidious discriminatory animus [lay] behind the [alleged] conspirator's action"]. Therefore, this claim is without merit. <u>Cf</u>. <u>Simmons</u>, 47 F.3d at 1377 ["We have specifically rejected § 1985 claims whenever the purported conspiracy is alleged in a mere conclusory manner"].

**VI.**

With respect to Plaintiff's Sarbanes-Oxley Act claim in Count V of the Complaint, under which Plaintiff seeks criminal sanctions against the Defendant, there is no private right of action provided for in that Act under which criminal penalties could be assessed for any alleged altering of documents. <u>See</u> 18 U.S.C. § 1519; <u>Peavey v. Holder</u>, 657 F.Supp.2d 180, 190-191 (D.D.C. 2009). Plaintiff's conspiracy claims in Counts VI and VII of the Complaint are also without

19

merit for the reasons previously discussed, while to the extent Plaintiff is alleging unconstitutional conduct by the Defendant, standing alone, by virtue of the Defendant allegedly discriminating against him on the basis of his race in violation of his constitutional rights, the Defendant correctly notes that, as a private entity, it is not subject to suit for a violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). Cf. Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982); Burton v. Willmington Parking Authority, 365 U.S. 715, 721 (1961) [purely private conduct, no matter how wrongful, injurious, or discriminatory, is not actionable under 42 U.S.C. § 1983]; Howard v. Wells Fargo Bank, No. 10-2328, 2010 WL 4717643, at * 1 (D.Colo. Nov. 12 2010)[Dismissing § 1983 claim where plaintiff failed to present facts to show that bank acted under color of state law].

## VII.

Plaintiff's remaining claims, primarily state law causes of action but also citing to some federal statutes, all also fail for lack of any factual or evidentiary support.

To maintain a defamation claim,[18] Plaintiff must have evidence to show that the Defendant made an unprivileged false and defamatory statement concerning him to a third party, fault on the part of the Defendant, with resulting harm. Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). The Plaintiff alleges in Count VIII that the Defendant provided false and untrue information to David Bates, the appraiser of his property, as well as to the City of North Charleston's employees, agents or attorneys regarding the subject property and the pending state court mortgage

---

[18]Count VIII of the Complaint allege claims for "defamation, libel and slander". Libel and slander are the two forms of a defamatory communication. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999).



foreclosure action. However, Plaintiff has failed to present any evidence to show the nature or subject matter of any such statements, or to establish how any statements or information provided were defamatory.

With respect to his breach of contract claim, Plaintiff alleges that the Defendant did not perform in accordance with the required Truth In Lending obligations, RESPA obligations, and FRESA Guidelines, and intentionally interfered with Plaintiff's ability to acquire a Certificate of Occupancy. Again, however, he has presented no evidence whatsoever to support any of these allegations. In fact, the evidence before the Court shows that it was the *Plaintiff* and/or his wife who defaulted under the terms of the contract by failing to make loan payments and by failing to obtain a Certificate of Occupancy. See Defendant's Exhibit A [Construction Loan Agreement], Preliminary Statement (Section (v)), Article 3 (§ 2(b)(i)), Article 4 (¶¶ 1 and 5).

Plaintiff's "Privacy Act of 1974" cause of action asserts a claim under a statute that applies to public actors, not private entities such as the Defendant, and is therefore subject to dismissal. See 5 U.S.C. § § 551, 552; Mitchell v. G.E. American Spacenet, No. 96-2624, 1997 WL 226369 at * 1 (4th Cir. May 7, 1997)["The district court properly dismissed the claim under the Privacy Act because the Defendant is a private corporation and not an agency subject to suit under the Act. See 5 U.S.C.A. 552(f)."]; see also Bell v. Moore, No. 06-1526, 2007 WL 865313, * 3 (D.Arizona Mar. 20, 2007).

Plaintiff's "fraud" claim fails to set forth or establish the required elements of proof for this claim. Cf. Enhance-It, L.L.C. v. American Access Technologies, 413 F.Supp. 2d 626, 629 (D.S.C. Jan . 23, 2006)["Under South Carolina law, in order to prove fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its



falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequence and proximate injury."]. Plaintiff alleges that the Defendant provided information concerning him from their computer records to the City of North Charleston without his authorization, and that it did so with the intent to "defraud" him and in an effort to illegally foreclose on his property. However, to the extent information from the Defendant's computers were used to support the foreclosure action filed against the subject property, or information contained in the Defendant's computers was made available to the City of North Charleston, there is no evidence that, to the extent any such events happened, any information provided was false, or that the Defendant's actions were done with the intent to defraud the Plaintiff or to perpetrate any type of fraud. Insofar as Plaintiff's fraud claim is predicated on the federal Computer Fraud and Abuse Act, that Act provides relief where computers of financial institutions are used in interstate and foreign commerce to perpetrate a fraud or a crime. See 18 U.S.C. § 1030; WEC Cardina Energy Solutions LLC v. Miller, 687 F.3d 199, 201 (4th Cir. 2012). Plaintiff has presented no evidence to show that the Defendant used its computer records to commit any fraudulent or abusive act.

In sum, Plaintiff's general and conclusory claim that the Defendant used information in their computers in an effort to "defraud" him as part of an "effort to illegally foreclose on [his] property", without any supporting evidence, is simply insufficient to give rise to a genuine issue of fact or to survive summary judgment on this claim. See Atkinson, 91 F.3d at 1129 [speculative and conclusory allegations cannot support claim]; King, No. 09-410, 2012 WL 3133677, at * 10 [Finding no genuine issue of fact where only evidence opposing summary judgment was "uncorroborated and



self-serving" testimony]; <u>Morgan</u>, 829 F.2d at 12 ["Even though <u>pro se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 28, 2013
Charleston, South Carolina

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

